Gerald BARKER, Appellant

v.

COMMONWEALTH Of Kentucky, Appellee.

and

Commonwealth Of Kentucky, Appellant

v.

Ryan Jones, Appellee.

Nos. 2010–SC–000116–DG, 2010–SC–000123–DG.

Supreme Court of Kentucky.

Sept. 20, 2012.

Frederick W. Rhynhart, Newark, DE, for Appellant Gerald Barker.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, for Appellee Commonwealth Of Kentucky.

Jack Conway, Attorney General of Kentucky, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Zrankfort, KY, for Appellant Commonwealth Of Kentucky.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellee Ryan Jones.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

We granted discretionary review of these two probation revocation cases to consider whether the trial court may proceed to hold evidentiary hearings to revoke or modify probation when the grounds for

revocation or modification are new, unresolved criminal charges against the probationer. We hold:

- The trial court is not required to delay probation revocation or modification hearings awaiting resolution of the criminal charges that arise during the probationary period, reaffirming existing precedent;
- When the probationer is faced with probation revocation or modification and a criminal trial based upon the same, conduct that forms the basis of new criminal charges, the probationer's testimony at the probation revocation hearing is protected from use at any later criminal trial in the state courts of Kentucky;
- The trial court must advise the probationer that any testimony the. probationer gives in probation revocation hearings that relates to the facts underlying the new charges cannot be used as substantive evidence in the trial of the new charges; and
- The probationer's testimony at the revocation hearing can be used for impeachment purposes or rebuttal evidence in the trial of the new charges, and the trial court shall so advise the probationer before the probationer testifies at the revocation hearing.

## II. BARKER AND JONES, FELONY PROBATIONERS, APPEARED IN CIRCUIT COURT FOR REVOCATION BASED ON NEW CRIMINAL CHARGES.

Gerald Barker's felony conviction is based upon his guilty plea to nine counts of fraudulent use of a credit card over $100, one count of first-degree possession of a controlled substance, and one count of possession of drug paraphernalia. Barker received a sentence of five years' probation. Before the expiration of the period of probation, the Commonwealth moved to revoke probation because Barker received new criminal charges.

Ryan Jones pled guilty to trafficking in a controlled substance in the first-degree (first offense), tampering with physical evidence, possession of marijuana, and possession of drug paraphernalia (first offense) and received a sentence of seven years' imprisonment, probated for five years. Before the expiration of the period of probation, the Commonwealth moved to revoke probation because Jones received new criminal charges.

## A. Barker's Probation Revocation.

At Barker's probation revocation hearing, his counsel argued that probation revocation proceedings were premature because Barker merely incurred new charges, not new convictions. But the trial court proceeded to hear and decide the revocation motion.

At the revocation hearing, Barker's assigned probation officer was the only witness called by either side. The officer's testimony recited the contents of a written special supervision report she submitted earlier to alert the trial court of Barker's arrest on new charges, which consisted of four counts of fourth-degree assault. The source of the officer's information on these assaults was (1) the citation issued to Barker by the Kentucky State Police documenting Barker's arrest on these new charges and (2) a conversation between the officer and Barker's sister, who told the officer that she was afraid of Barker and did not want him to return to the family home.

Barker made two arguments opposing revocation: (1) the absence of physical evidence showing conclusively that he violated the conditions of his probation and (2) no probation violation occurred without a

conviction on the new charges. The trial court revoked Barker's probation and imposed the seven-year sentence of confinement. The Court of Appeals affirmed the trial court's order.

## B. Jones's Probation Revocation.

Jones's probation officer submitted a special supervision report to the trial court requesting a bench warrant for Jones's arrest and revocation of Jones's probation because of Jones's indictment on new charges of possession of a controlled substance. Before the probation revocation hearing, Jones's counsel sought postponement, arguing that the same facts asserted as grounds for probation revocation were also the basis for the new indictment. The trial court denied this requested postponement.

At the probation revocation hearing, Jones's probation officer testified that he received information from the police that witnesses reported seeing Jones shoot a gun near his residence. The probation officer accompanied a group of police officers to Jones's aunt's residence where Jones lived. They encountered there a male, Justin Valentine, and two females on the front porch. One of the officers detected an odor of marijuana, and the three individuals were taken into custody. Jones was not there at the time.

Jones's aunt admitted the officers into the house and showed them the basement where Valentine and Jones shared living quarters. Plainly visible on top of a dresser within these quarters were marijuana stems and seeds. A search of the living quarters ensued, yielding digital scales, fifty dollars in cash, marijuana in plastic bags, a white powdery residue on the surface of a tray, and marijuana in the pockets of various articles of clothing.

When Jones arrived home, he was immediately taken into custody and questioned about his knowledge of the drugs. He denied any knowledge of the drugs. But he stated that he could not pass a drug test because he smoked marijuana the previous day. The indictment followed.

Jones elected to remain silent at the probation revocation hearing. But he did attempt a defense by presenting testimony from witnesses, including his aunt and Valentine. At the close of the hearing, the trial court made oral findings, appearing on video record, that Jones violated the conditions of probation. Later, the trial court issued a written order revoking Jones's probation. Holding that Jones was entitled to limited immunity in later prosecution for any testimony he might give in the revocation hearing, the Court of Appeals reversed the trial court's revocation order and remanded the case to the trial court for further proceedings consistent with the holding of the Court of Appeals.

## III. PROBATION REVOCATION PROCEEDINGS BASED ON NEW FELONY CHARGES.

On review in this Court, Barker argues that the trial court improperly considered his arrest on new felony charges as the sole basis for revoking his probation because he had not been convicted on those new felony charges. Jones claims the trial court erred by failing to postpone his probation revocation hearing until after the resolution of his new charges. Additionally, Jones argues that the timing of his probation revocation hearing erroneously forced him to choose between asserting his right against self-incrimination on the new felony charge and presenting a complete and meaningful defense to probation revocation.

We disagree with Barker and Jones that the trial courts were compelled to postpone the probation revocation hearings until after resolution of the pending criminal charges. Although Jones argues that the Fifth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution protect probationers at their probation revocation hearings, we decline to resolve these cases on constitutional grounds. Instead, we conclude that adopting an exclusionary rule would serve the interest of maintaining supervisory power over the probationer while allowing the probationer to present a defense to probation revocation.

So, in Barker's case, we affirm the opinion of the Court of Appeals because, under the circumstances, the fact that the trial court did not inform Barker that he could testify at his own probation revocation hearing with limited immunity did not affect his substantial rights or result in a manifest injustice. In Jones's case, we also affirm the Court of Appeals on different grounds and remand Jones's case to the trial court for proceedings consistent with this opinion.

## A. Due Process Requirements Applicable to Probation Revocation Hearings.

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law. . . ." And this Amendment is applicable to our state through the Fourteenth Amendment [1] and Section 2 of the Kentucky Constitution.

In *Morrissey v. Brewer*,[2] the United States Supreme Court considered whether due process was required in parole revocation hearings and determined that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due to a defendant in [a criminal] proceeding does not apply to parole revocations."[3] But because parole revocation hearings deprive an individual of a conditional liberty interest, the Court was compelled to determine what level of process was due in parole revocation hearings.[4] In *Morrissey*, the Court held that the minimum requirements of due process in a parole revocation included:

- Written notice of the alleged parole violations,
- Disclosure of the evidence against the parolee,
- An opportunity to be heard in person and to present witnesses and evidence,
- The right to confront and cross-examine adverse witnesses,
- A neutral hearing body, and
- A written statement of fact describing the evidence relied on and reasons for revocation.[5]

Shortly after *Morrissey*, the U.S. Supreme Court decided *Gagnon v. Scarpelli*.[6] In *Gagnon*, the Court considered due process requirements in the context of probation revocations and determined that a

[p]robation revocation, like parole revocation, is not a stage of. a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to

---

1. U.S. CONST. amend. XIV, § 1.

2. 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

3. *Id.* at 480, 92 S.Ct. 2593.

4. *Id.* at 480–83, 92 S.Ct. 2593.

5. *Id.* at 488–89, 92 S.Ct. 2593.

6. 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*.[7]

Kentucky precedent has recognized that the minimum level of due process described in parole revocation proceedings in *Morrissey* applied equally to probation revocations through *Gagnon* and must be afforded to probationers in Kentucky.[8]

## B. When the Underlying Facts Constitute the Basis of a Probation Revocation Hearing and a New Criminal Charge, the Trial Court is not Required to Postpone the Probation Revocation Hearing Until After Resolution of the Criminal Case.

 In Barker's case, the Court of Appeals relied on *Tiryung v. Commonwealth*[9] to affirm the trial court's decision to proceed with probation revocation. In *Tiryung*, the probationer argued that the trial court erred by revoking his probation for committing an offense of which he was not yet convicted.[10] But the Court of Appeals held that

[i]t is clear in this Commonwealth that probation is a privilege rather than a right. One may retain his status as a probationer only as long as the trial court is satisfied that he has not violated the terms or conditions of the probation. It is not necessary that the Common-

wealth obtain a conviction in order to accomplish revocation of probation.[11]

We agree with the holding in *Tiryung*.

 Probation has dual goals, protection of the public and rehabilitation of the offender.[12] The competing principles of due process for the probationer, efficiency for the criminal justice system, and protection for the public become highlighted when the state seeks to revoke probation.[13] As stated in *Brown v. Commonwealth*,[14] and reiterated in *Tiryung*, probation is a privilege by which the trial court restores conditional liberty to the probationer.[15] Public safety demands quick and efficient procedures to restrict the liberty of a failing probationer.[16] But because the probationer has received conditional liberty through the grant of probation, due process safeguards intercede to ensure that liberty is not unfairly taken away.[17] A probation revocation hearing provides the process through which trial courts balance these conflicting concerns. In Kentucky, the probation revocation process is addressed by statute.

KRS 533.050 provides, in pertinent part, that "the court may not revoke or modify the conditions of a sentence of probation . . . except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification." But this statute does not control the timing of the probation revocation hearing. So, for guidance

---

7. *Id.* at 782, 93 S.Ct. 1756 (citation omitted).

8. *Childers v. Commonwealth*, 593 S.W.2d 80, 81 (Ky.App.1979).

9. 717 S.W.2d 503 (Ky.App.1986).

10. *Id.*

11. *Id.* at 504.

12. *Griffin v. Wisconsin*, 483 U.S. 868, 885, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

13. Daniel F. Piar, *A Uniform Code of Procedure for Revoking Probation*, 31 Am.J.Crim.L. 117, 119 (2003).

14. 564 S.W.2d 21 (Ky.App.1977).

15. *Id.* at 23; *Tiryung*, 717 S.W.2d at 504.

16. PIAR, *A UNIFORM CODE OF PROCEDURE FOR REVOKING PROBATION*, 31 Am.J.Crim.L. at 119.

17. *Id.*

on timing, we turn to KRS 533.030, which governs conditions of probation and conditional discharge.

KRS 533.030(1) states that "[t]he court shall provide as an explicit condition of every sentence to probation or conditional discharge that the defendant not commit another offense during the period for which the sentence remains subject to revocation." The accompanying 1974 Kentucky Crime Commission/LRC Commentary notes, "The last sentence of subsection (1) is added so that there can exist no doubt but that commission of another offense while probation or conditional discharge exists is reason for revocation of such a sentence."[18] Notably, the Commentary refers to the *commission* of another offense" but not the *charge* or *conviction* of another offense.

▮▮▮▮ To sustain a criminal conviction requires proof *beyond a reasonable doubt*. By contrast, "[p]robation revocation requires proof by a preponderance of the evidence that a violation has occurred."[19] Because of the lower burden of proof required to revoke probation, a trial court could revoke probation before a jury convicts the probationer by finding him guilty beyond a reasonable doubt on identical facts. And a trial court could properly revoke probation on less evidence than is required for a jury to convict.

▮▮▮▮ Consequently, we hold that *Tiryung* remains good law. An individual's probation may be revoked any time before the expiration of the probationary period when the trial court is satisfied by a preponderance of the evidence presented in a revocation hearing that the probationer violated a condition of probation. Although new charges may form the basis for revocation proceedings, a conviction on those charges is not necessary in order to revoke probation.

**C. If a Probationer Chooses to Testify at a Probation Revocation Hearing Before a Criminal Trial on the Same Facts, the Probationer is Entitled to Protection From his Testimony Being Used as Substantive Evidence at Trial.**

▮▮▮▮ In *Morrissey*, the United States Supreme Court confirmed the probationer's right to be heard to promote intelligent and fair revocation decisions and to encourage rehabilitation by treating probationers with basic fairness.[20] And basic fairness demands that a defendant must not be forced to forfeit one constitutional right to preserve another constitutional right.[21] But the Court in *Morrissey* also emphasized that probation revocation hearings are not criminal proceedings. These revocation proceedings must be flexible in contrast to the formality typical-

---

18. KRS 533.030 was originally House Bill 232, the Penal Code. House Bill 232 was introduced in the 1974 session of the General Assembly; and the proposed § 285(1) contained the exact wording of the current version, KRS 533.030(1). When the General Assembly passed HB 232, § 285(1) was renumbered as § 287(1). But no amendments were adopted, and the wording remained the same.

19. *Hunt v. Commonwealth*, 326 S.W.3d 437 (Ky.2010) (*citing Rasdon v. Commonwealth*, 701 S.W.2d 716, 719 (Ky.App.1986)).

20. 408 U.S at 484, 92 S.Ct. 2593. Here we refer to probationers. Although *Morrissey* analyzed due process in relation to parolees, the reasoning and analysis from *Morrissey* was incorporated into *Gagnon*, 411 U.S. 778, 93 S.Ct. 1756, and applied to probationers.

21. *Simmons v. United States*, 390 U.S. 377, 393–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also Shull v. Commonwealth*, 475 S.W.2d 469, 471–72 (Ky.1971).

ly associated with criminal prosecutions.[22] So a flexible revocation process that preserves basic fairness for probationers in post-conviction proceedings is the preferred result.

Both Barker and Jones claim the fact that their probation revocation hearings occurred before the trial of their related criminal charges impermissibly forced them to choose between self-incrimination and presenting a complete defense. The Court of Appeals panel that considered this issue in Jones's case held that basic fairness entitles a probationer to some Fifth Amendment protections in a probation revocation hearing in which the grounds for revocation are the same substantive facts as those of a new criminal charge. Although we do not reach the determinative constitutional issue as did the Court of Appeals, we do find that probationers who choose to testify at the revocation hearing are entitled to a modified privilege against self-incrimination in the form of an exclusionary rule.

### 1. The Fifth Amendment in Post–Conviction Proceedings.

 The Fifth Amendment of the United States Constitution, applicable to Kentucky through the Fourteenth Amendment and Section 11 of the Kentucky Constitution, describe the right against self-incrimination. But this is not an absolute right. The right is protected before and at trial.[23] And Fifth Amendment privileges do not apply to nontestimonial evidence or voluntary statements.[24] The right against self-incrimination provides two types of protection in criminal proceedings: (1) a defendant cannot be compelled to testify, and (2) the factfinder cannot draw adverse inferences by the defendant's refusal to testify.[25]

The United States Supreme Court decision that remains the starting point for consideration of Fifth Amendment privileges in post-conviction proceedings is Minnesota v. Murphy.[26] In Murphy, the defendant, Murphy, received probation for a sex-related offense; and a condition of probation was that he be truthful with his probation officer in all matters.[27] During the course of a sexual offender treatment program, Murphy admitted to committing rape and murder several years earlier.[28] His counselor relayed this information to Murphy's probation officer.[29] And, in a meeting with his probation officer, Murphy admitted he committed the rape and murder, for which he was later convicted.[30] On appeal, Murphy claimed that he was forced to make his admission in violation of his right against self-incrimination.[31]

In Murphy, the U.S. Supreme Court held that a probationer does not lose his Fifth Amendment privilege against self-incrimination because he has been convicted of an offense; but a state may compel a probationer to appear and be truthful in all matters that affect his probationary sta-

22. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593.

23. *Miranda v. Arizona*, 384 U.S. 436, 460–61, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

24. *See, e.g., Oregon v. Elstad*, 470 U.S. 298, 304–05, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

25. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

26. 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

27. *Id.* at 422, 104 S.Ct. 1136.

28. *Id.* at 423, 104 S.Ct. 1136.

29. *Id.*

30. *Id.* at 424, 104 S.Ct. 1136.

31. *Id.* at 425, 104 S.Ct. 1136.

tus.[32] The Court also held that a Fifth Amendment violation could occur in situations in which the probation officer threatens the imposition of a "substantial penalty" for refusal to answer incriminating questions, even if the probationer did not assert his Fifth Amendment privilege.[33] The *Murphy* Court stated:

> A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.[34]

As recently as *Gamble v. Commonwealth*,[35] Kentucky courts have had the occasion to consider Fifth Amendment rights in relation to probation revocation hearings. Reaffirming the decision in *Childers v. Commonwealth*,[36] the *Gamble* court stated that there was "no right to assert a Fifth Amendment privilege against self-incrimination in [a] probation revocation hearing in response to questions concerning why [the probationer] had not paid past due child support."[37] At the time, Gamble was not charged with an additional crime for failing to make child support payments. So the hearing in *Gamble* focused on whether the defendant was no longer in compliance with the conditions of his conditional discharge by failing to pay child support, an act of omission, which did not immediately implicate his right against self-incrimination in a pending criminal case. The *Gamble* court went on to quote *State v. Cass*,[38] which stated:

> We [. . .] conclude that a probationer is not entitled to the [F]ifth [A]mendment right against self-incrimination as afforded to a defendant in a criminal trial. However, a probationer is protected by the [F]ifth [A]mendment from answering any questions where those answers could be used against him or her in any subsequent criminal proceedings.[39]

While we agree that a probationer is afforded some protections when the charges against him form the basis for probation revocation and new criminal charges, we do not need to determine whether the Fifth Amendment right against self-incrimination extends to this situation.

## 2. *The Court's Supervisory Powers.*

■ There is a federal circuit split about what is required by the federal constitution when a parolee or probationer faces revocation for actions that also form

**32.** 465 U.S. 420, 426–27, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). The Court also held that the probationer must assert the privilege and that the probation officer is not required to give *Miranda* warnings when asking the probationer questions.

**33.** *Id.* at 434–35, 104 S.Ct. 1136.

**34.** *Id.* at 435, 104 S.Ct. 1136.

**35.** 293 S.W.3d 406 (Ky.App.2009)

**36.** 593 S.W.2d 80 (Ky.App.1979).

**37.** 293 S.W.3d at 411.

**38.** 635 N.E.2d 225 (Ind.App.1994);

**39.** 293 S.W.3d at 410 (*citing Cass,* 635 N.E.2d at 226–27).

the basis for new charges.[40] But, recently, courts have chosen to resolve this matter in another way by exercising the supervisory power of the courts. Read in conjunction, Sections 110, 115, and 116 of the Kentucky Constitution extend to the Supreme Court of Kentucky supervisory powers over the judicial branch. And, on this particular issue, "[t]he question before us should not be limited to whether the [Fifth Amendment] so requires; we should decide whether the proper performance of the supervisory authority entrusted to us by the Kentucky Constitution so requires." [41]

A probationer who chooses to testify at his probation revocation hearing exposes himself to revelations of evidence that could be used in a later criminal prosecution. A truthful answer or tendered explanation by a probationer at a revocation hearing might make him more vulnerable in the later trial. But by choosing not to be heard at the revocation hearing, the probationer loses the ability to defend himself or mitigate the penalty before the trial court considering modifying or revoking probation. Without qualified protections, the probationer confronts a considerable dilemma, a decision between remaining silent and presenting a defense to revocation.[42]

The Alaska Supreme Court considered this issue under similar circumstances. In *McCracken v. Corey*,[43] the defendant parolee was arrested and charged with being a felon in possession of firearms. Under the circumstances, this both violated Alaska law and the conditions of parole.[44] And his revocation hearing was scheduled before his trial on the new charges.[45] The defendant parolee made a constitutional argument that it was impermissible to make him choose between presenting a complete defense and his right against self-incrimination.[46] But the *McCracken* court chose to avoid the constitutional question and, instead, relied on its inherent supervisory powers to address the issue.[47]

The Alaska court determined that:

that the defendant's statements are not admissible into evidence against the defendant in any criminal proceeding.

---

**40.** *Melson v. Sard*, 402 F.2d 653 (D.C.Cir. 1968), holds that any self-incriminating statements made at a parole revocation hearing may not be used affirmatively against a defendant in the subsequent criminal proceedings. And. *Ryan v. Montana*, 580 F.2d 988 (9th Cir.1978), holds that a state is not required, under the federal constitution, to grant immunity from the use of the probationer's testimony at a probation revocation hearing.

**41.** *Commonwealth v. Hubbard*, 777 S.W.2d 882, 885 (Ky.1989) (5–2 decision) (J. Leibson dissenting).

**42.** A similar conflict exists when a defendant chooses to present expert testimony relating to a mental disease or defect. Under Kentucky Rules of Criminal Procedure (RCr) 7.24(3)(B)(ii), when the defendant makes this choice, the court may order the defendant to submit to a mental examination. Truthful answers at the mental examination may make him more vulnerable at trial. To protect against such a consequence, the rule provides

**43.** 612 P.2d 990 (Alaska 1980).

**44.** *Id.* at 992–93.

**45.** *Id.* at 993.

**46.** *Id.*

**47.** *Id.* at 998. The court observed that cases like the one before it generally fell into two analytical lines: (1) penalty cases, in which the assertion of the privilege against self-incrimination resulted in the automatic loss of a tangible benefit; and (2) surrender cases, in which one must surrender a constitutional right for the exercise, thereby creating an impermissible choice. After analyzing relevant case law on the two lines of cases, the court concluded that "there is no clear standard for determining what choices constitute

1. Upon timely objection, a parolee facing revocation and a criminal trial based on the same conduct will be able to present evidence or testimony at the revocation hearing, which will be inadmissible at subsequent criminal proceedings; [48] and

2. A parolee must be advised prior to the revocation proceedings that any evidence or testimony offered by him at the hearing may not be admitted in the subsequent criminal proceedings.[49]

Consequently, the *McCracken* court adopted what is commonly known as the "use immunity" or "derivative use immunity" rule.[50] The supervisory powers approach most commonly employs a version of the "use" or "derivative use" immunity rule and has been adopted by several other state courts.[51] And because we believe this approach aids in the proper administration of justice, we employ the Court's supervisory powers to provide limited protections to probationers at revocation hearings.

In recognizing a constitutional right against self-incrimination at a revocation hearing, the Florida Supreme Court has considered the same issue and held

that a probationer, upon a specific request and at periodic intervals, may be required to identify himself and provide all necessary information for his supervision including the place of his residence and his employment. He may also be required to confirm or deny his location at a particular place at a particular time, to explain his noncriminal conduct, and to permit the search of his person and quarters by the supervisor. Failure to do so may itself be grounds for revocation [of] probation. His agreement to accept the terms of probation effectively waives his Fifth Amendment privilege with regard to this information. There would be no practical means to properly supervise an individual on probation without a requirement that the probationer respond to directions and requests for information from the probation supervisor. On the other hand, the Fifth Amendment privilege against self-incrimination must be applicable to specific conduct and circumstances concerning a separate criminal offense.[52]

Although we do not share the Florida Supreme Court's view that the probationer's testimony is protected by the federal constitution, we believe this statement describes an appropriate exclusionary rule that protects against self-incrimination in post-conviction proceedings.[53] This rule

---

a penalty for the assertion of a constitutional right as opposed to a mere tactical decision." *Id.* at 995.

**48.** *McCracken*, 612 P.2d at 998.

**49.** *Id.*

**50.** *Id.* at 997.

**51.** *State v. Begins*, 147 Vt. 295, 514 A.2d 719 (1986); *State v. Boyd*, 128 Ariz. 381, 625 P.2d 970 (Ariz.Ct.App.1981); *People v. Rocha*, 86 Mich.App. 497, 272 N.W.2d 699 (1978); *State v. Hass*, 268 N.W.2d 456 (N.D.1978); *State v. DeLomba*, 117 R.I. 673, 370 A.2d 1273 (1977); *State v. Evans*, 77 Wis.2d 225, 252 N.W.2d

664 (1977); *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975).

**52.** *State v. Heath*, 343 So.2d 13, 16 (Fla.1977).

**53.** The dissent cites several federal cases for the proposition that "courts cannot confer immunity upon a witness on their own initiative." But these cases merely prohibit trial courts from offering immunity to defendants on an ad hoc basis. *United States v. D'Apice*, 664 F.2d 75 (5th Cir.1981) (holding that the trial court erroneously granted the defendant immunity over the prosecutor's objection because "the district court had no independent authority to bestow use immunity on [the defendant]"); *United States v. Davis*, 623 F.2d

best balances the interests involved and "will ensure that a court retains a great deal of supervisory capacity over a probationer, while ensuring that no probationer will be compelled to give evidence from his own mouth that can be used in any way to prosecute him for a criminal offense." [54]

In accord with our reading of *Murphy* and our interpretation of Section 11 of the Kentucky Constitution,[55] probationers are required to answer all reasonable questions related to compliance with the conditions of probation that do not tend to incriminate them in a future criminal prosecution. The judicial rule we adopt today protects probationers who testify at revocation hearings when their testimony relates to new crimes. And the trial court hearing the probation revoca-

tion must advise probationers that any testimony related to new crimes given during a revocation hearing cannot be substantively used in a future criminal proceeding.[56] But the trial court hearing the probation revocation motion should advise the probationer that the same testimony could be used in the later trial for impeachment or rebuttal in certain circumstances.[57]

### 3. *Rule–Based Protection Applied to Barker and Jones.*

Barker requested that the revoking court postpone his probation revocation hearing until after resolution of the new criminal charges. But Barker did not specifically request immunity or attempt to invoke his right against self-incrimination. So we review this matter for palpable er-

188, 192 (1st Cir.1980) (holding that "[t]he trial court has no power to grant immunity to a witness whose testimony the defendant may wish to offer and the Government cannot be forced to grant such immunity"); *United States v. Smith*, 542 F.2d 711, 715 (7th Cir. 1976) (holding that a district court cannot "direct the government to seek use immunity in order to secure testimony which the defense deems relevant"); *Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir.1975) (holding that "[a] district judge is not authorized to initiate immunity"); and *In re Corrugated Container Antitrust Litigation*, 644 F.2d 70, 79 (2d Cir.1981) (holding that "[t]o prevent prosecutions from being unnecessarily hampered, district courts should not compel witnesses to respond to questions other than ones concerning specific subjects that actually were touched upon by questions appearing in the transcript of the immunized testimony"). Here, we are adopting an exclusionary rule that applies across the board to all probationers who testify at their probation revocation hearing.

**54.** PIAR, *A UNIFORM CODE OF PROCEDURE FOR REVOKING PROBATION*, 31 Am.J.Crim.L. at 153.

**55.** "Section Eleven of the Constitution of Kentucky and the Fifth Amendment to the Constitution of the United States are coexten-

sive and provide identical protections against self-incrimination." *Commonwealth v. Cooper*, 899 S.W.2d 75, 78 (Ky.1995).

**56.** As a side note, we observe that this judicial rule is only binding on the state courts of the Commonwealth. In accordance with Section 109 of the Kentucky Constitution, we are a unified court system. Consequently, rules made by this Court are binding on all state courts. However, testimony or evidence offered at a revocation hearing related to new charges in federal court or foreign jurisdictions will not necessarily receive the same protections.

**57.** The instruction of this Court in *Grady v. Commonwealth* was applied to suppression hearings but tends to be informative under the facts before us, "[W]e find it pertinent to point out that Appellant may testify in his own behalf at a suppression hearing without waiving the privilege against self-incrimination. Furthermore, testimony at a suppression hearing may be confined on cross-examination to the scope of the direct examination. And while his testimony may be used later for impeachment purposes, it may not otherwise be used against him unless he fails to object." 325 S.W.3d 333 n. 3 (Ky.2010) (citations omitted).

ror.[58]

Before his probation revocation hearing, Barker made outbursts regarding the conditions of his probation. He spoke over counsel, interjecting, "I'm totally confused. I have no idea what I am supposed to have done. I haven't seen any kind of paperwork or anything. No one has told me anything. I don't know what I'm supposed to have done." When the trial court responded that the special supervision report was self-explanatory and that the probation revocation hearing would begin, Barker exclaimed, "Oh, that thing with my family? I was shot seven times. I was shot with an air rifle. I was trying to protect my family members." The Kentucky State Police report indicated that Barker had been drinking and struck four members of his family[59] before he fled the scene. Barker offered no witness testimony, did not request immunity to testify at his probation revocation hearing, and appeared to be unaware of what was occurring at the hearing. Under the circumstances, because the trial court accepted Officer McGuire's testimony as credible and Barker made no real effort to put on a defense, we cannot say that the fact that the trial court did not inform him that he could testify at his own probation revocation hearing with limited immunity affected his substantial rights or resulted in a manifest injustice. Accordingly, we affirm the decision of the Court of Appeals.

Jones requested and was denied immunity for testimony before the revoking court. So we affirm the decision of the Court of Appeals that a "probationer's testimony at a probation revocation hearing cannot be used substantively against him at a subsequent criminal proceeding arising from the same facts." This matter is remanded for further proceedings consistent with the opinion.

## D. The Trial Court did not Violate Barker's Due Process Rights by Relying on Hearsay Testimony at Barker's Revocation Hearing or in its Finding of Facts Supporting Revocation.

### 1. Hearsay Evidence.

 Barker claims that he was prevented from effectively cross-examining the Commonwealth's witness against him because the testimony against him was hearsay. As previously stated, probation revocation hearings are not criminal proceedings but flexible hearings that accept matters into evidence otherwise inadmissible in a criminal prosecution.[60] Kentucky courts have held that the decisions in *Morrissey* and *Gagnon* "did not intend to foreclose the admission of hearsay evidence at these informal types of hearings and there is no absolute right to confront witnesses...."[61]

 In Barker's case, the hearsay evidence presented against Barker was a Uniform Citation from the Kentucky State Police that described alleged assaults Barker committed against his family. Barker's probation officer was not present at the time of his arrest but read the citation at his probation revocation hear-

58. "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26.

59. There were visible injuries on several members of the family.

60. *Morrissey*, 408 U.S. at 480 and 489, 92 S.Ct. 2593.

61. *Marshall v. Commonwealth*, 638 S.W.2d 288, 289 (Ky.App.1982).

ing. Officer McGuire also testified that she spoke to Barker's sister about the incident.[62] Barker cross-examined Officer McGuire but did not call any witnesses or set forth a defense to the charge. Because hearsay evidence is acceptable at probation revocation hearings and Barker did not present a defense, the revoking court did not err when it revoked Barker's probation based on Officer McGuire's testimony.

### 2. *Findings of Fact.*

Barker claims his due process rights were violated when the trial court did not provide a sufficient written statement detailing the evidence relied on and reasons for revoking probation. He further requests that this Court reconsider its holding in *Commonwealth v. Alleman.*[63] We decline to revisit our holding in *Alleman* and find no error in the revoking court's written order.

 Due process requires that the factfinder issue a written statement detailing the evidence relied on and reason for revoking probation.[64] And KRS 533.050(2) states that "the court may not revoke or modify the conditions of a sentence of probation ... except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification."

 After a hearing, at which Barker was represented by counsel, the trial court made oral findings that he violated the terms of his probation and returned him to imprisonment. These oral findings are recorded on the videotape of the revocation proceedings in open court. The trial court's written findings followed, saying:

This matter is now before the Court on motion of the Commonwealth to revoke the Defendant's probation on grounds of violation of the terms of probation by arrest for assault in the 4th degree four (4) counts. The Defendant appeared in Court with counsel, and the Court having heard testimony and being sufficiently advised from the record, finds that the Defendant has violated the conditions of his probation.

The written findings state that the testimony at the hearing led to a conclusion that Barker violated his probation. These written findings are sparse. But the trial court's recorded oral findings state, "The fact he had been drinking and he assaulted four family members ... would be a violation of the conditions of his probation. For that reason, the court finds that he has violated the conditions of his probation." In *Alleman*, this Court held that oral findings and reasons for revocation stated at the conclusion of the hearing by the trial court from the bench satisfy due process rights when they are sufficiently reliable for a reviewing court to determine the justifications for revocation.[65] Based on the record and the revoking court's conclusions from the bench, it is clear that Barker's probation was revoked for consuming alcohol and assaulting his family members—clear violations of his probation conditions. The written findings, coupled with the oral findings of the trial court, satisfied the demands of due process.

### IV. CONCLUSION.

For the foregoing reasons, the decisions of the Court of Appeals are hereby affirmed in both cases.

---

62. Officer McGuire testified that Barker's sister told her she was afraid for her life, and Barker was not welcome to return to their home.

63. 306 S.W.3d 484 (Ky.2010).

64. *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593.

65. 306 S.W.3d at 484.

All sitting. ABRAMSON, NOBLE, and VENTERS, JJ., concur.

CUNNINGHAM, J., concurs in result only by separate opinion in which SCHRODER and SCOTT, JJ., join.

CUNNINGHAM, J., Concurring in Result Only.

First of all, I concur with the majority that, in both *Barker* and *Jones,* the trial court did not have to wait upon a conviction for new charges before proceeding to a hearing and revocation of probation based upon the commission of additional offenses. I furthermore agree in the result of our decision to uphold the revocation of Barker's probation, but I disagree with the reasoning. By implication in *Barker,* and by direct holding in *Jones,* this Court—for the first time to my knowledge—invests the courts with the prosecutorial function of immunity for criminal defendants.

I respectfully, but strongly, disagree from that part of the majority opinion which establishes use immunity' for defendants in revocation hearings. I dissent on three grounds: (1) to invoke our supervisory power to establish a new rule of evidence and procedure invades the rule-making procedure of this Court; (2) to do so is a violation of our separation of powers and blatantly against our state constitution; and (3) the issue at hand is of insufficient importance to the criminal defendant to merit such an extraordinary action by this Court.

## I. Supervisory Power of the Court

Unable to find ample authority under Fifth Amendment cases, the majority goes searching for another way to reach the intended aim. We choose to do this through the misapplication of the "supervisory power" of our Court.

Our majority reference Sections 110, 115, and 116 of our state constitution "in conjunction" as the source for our authority to do what it wants done in this case. With all due respect, I find nothing in Section 115 that is germane to the discussion of our "supervisory power." It deals only with the rights to appeal. We must then turn to the other two sections cited.

Section 110(2)(a) of our constitution states as follows:

> The Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, *or as may be required to exercise control of the Court of Justice.* (Emphasis added.)

Any "supervisory power" granted under this section is obviously for the administration of our Court of Justice. The words "control" and "administration" are practically interchangeable. There is no way to read this constitutional provision to authorize us to invade the procedural or evidentiary working of criminal trials.

Therefore, I am left to assume that the majority's use of "supervisory power" of the Court is rooted solely in Section 116—the Court's rule-making authority. Section 116 of our state constitution states:

> The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction, rules for the appointment of commissioners and other court personnel, *and rules of practice and procedure for the Court of Justice.* The Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar. (Emphasis added.)

It's critical to point out that this constitutional mandate does not authorize us to fulfill this purpose through "orders" or "opinions," but by rules. We do it here

today by our opinion. By our opinion, we introduce a blanket rule of evidence into the trials of criminal cases. By our opinion here today, we—by bald judicial edict—cloak witnesses with use immunity.

The majority cites no previous holding by this Court to support its wide-ranging rule. It simply draws from the writing of Justice Leibson in his dissent in *Commonwealth v. Hubbard*, 777 S.W.2d 882 (Ky. 1989). I draw from his writing also to support this dissent. His writing, in *Hubbard*, deals with two issues. The first one in which he beckons the use of "supervisory power" deals with whether private attorneys should be allowed to prosecute crimes in the courts of our Commonwealth. It has nothing to do with a procedural or evidentiary ruling, but simply who should be allowed to prosecute criminal cases in our courts. Justice Leibson criticizes the majority as to the second issue, however, where it allows judges to impose the sentence where juries are deadlocked. He states that to do so is outside of its authority and, by implication at least, outside its "supervisory power."

> I borrow Justice Leibson's exact words: Before undertaking such a change we should follow our carefully conceived, established policy for rule change. This includes a study and recommendation by the Supreme Court Committee on Criminal Rules, followed by a public hearing at the Kentucky Bar Association Annual Convention, before changing the rules. I disagree, not so much with the change, but with the precipitous nature by which we have accomplished it.

*Hubbard* at 887.

After our "precipitous" ruling here today, we no longer need the ponderous, labor intensive and time-consuming procedure of establishing our Rules of Criminal Procedure, Rules of Civil Procedure, or Rules of Evidence. We may from this day forth simply issue them under our "supervisory power."

The adoption of use immunity by this Court in probation revocation hearings is a monumental sea change for prosecutors of this state. They deserve to be heard.

## II. Separation of Powers

Our Court today declares:

The judicial rule we adopt today protects probationers who testify at revocation hearings when their testimony relates to new crimes. "And the trial court hearing the probation revocation must advise probationers that any testimony related to new crimes given during a revocation hearing *cannot be substantively used in a future criminal proceeding.*" (Emphasis added.)

For the very first time in the history of the Commonwealth, to my knowledge, the judge is now ordered to step down from the bench and take on a prosecutorial function—offering use immunity.

Our state constitution—often maligned but still obeyed—is much more explicit about the value of the separation of powers in democratic government than its federal counterpart. Two separate provisions drive the principle home.

First is Section 27:

The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

The U.S. Constitution has no comparable provision. Neither, for that matter, does Alaska, a state which provides the majority its main case for support and inspiration.

Our drafters of the state charter spoke directly to the issue before us in Section 28:

> No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

This Court has repeatedly paid judicial homage to this revered division of authority in a string of cases driving the point home. *Flynt v. Commonwealth,* 105 S.W.3d 415 (Ky.2003); *Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004); *Gibson v. Commonwealth,* 291 S.W.3d 686 (Ky.2009).

Immunity from prosecution and the basis for prosecution is strictly an executive action and may be granted by the government in exchange for a person's testimony. BLACK'S LAW DICTIONARY 819 (9th ed.2009) defines "use immunity" as "[i]mmunity from the use of the compelled testimony ... in a future prosecution against the witness."

Courts do not have jurisdiction over what the executive branch does in terms of whom and how to prosecute. They only have jurisdiction over criminal charges properly brought before them by way of warrant or indictment. That jurisdiction exists, for instance, in the case of the defendant's right to limited cross-examination in suppression hearings. *Shull v. Commonwealth,* 475 S.W.2d 469 (Ky.App. 1971). In such cases, the defendant can take the stand to contest the validity of a search without being subjected to cross-examination on the principal charge. This, however, is a Fifth Amendment and Section 10 issue—or maybe even a relevancy matter. It is not immunity.

There is federal statutory authorization for prosecutors to grant immunity to witnesses who refuse to testify. 18 U.S.C.A. § 6003. The federal courts have done heavy duty in keeping the trial judges out of the immunity business. There is a long line of cases proclaiming that courts cannot confer immunity upon a witness on their own initiative. *U.S. v. D'Apice,* 664 F.2d 75 (5th Cir.1981); *In re Corrugated Container Antitrust Litigation,* 644 F.2d 70 (2nd Cir.1981); *U.S. v. Davis,* 623 F.2d 188 (1st Cir.1980);' *U.S. v. Smith,* 542 F.2d 711 (7th Cir.1976); *Thompson v. Garrison,* 516 F.2d 986 (4th Cir.1975).

### III. Our Wide–Ranging Ruling is Without Justification

We operate under the cherished notion that a defendant is presumed innocent until proven guilty. In pursuit of that idea, we have cloaked the criminal defendant with a wide array of constitutional and statutory rights, which hopefully minimizes or eliminates the possibility of an innocent person being convicted. There is a line, however, between the rights of defendants and the protection of the public. In spite of the notion harbored by many, a defendant's right against self-incrimination is not woven into the whole cloth of due process. Even under the broad and liberal Fifth Amendment holdings of the U.S. Supreme Court, this constitutional right does not make a stop at every procedural crossroad. *Braswell v. U.S.,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *U.S. v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988); *Bellis v. U.S.,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

With all due respect, in the decision today this Court legislates. We do not enforce an existing right for the defendant. We create a new one out of the whole cloth under our "supervisory power."

The majority boldly states:

Although we do not reach the determinative constitutional issues as did the Court of Appeals, we do find that probationers who choose to testify at the revocation hearing are entitled to a modified privilege against self-incrimination in the form of an exclusionary rule.

In establishing our own new "exclusionary rule" out of our "supervisory-power," we not only step across the line of the separation of powers, but we create a new right for the defendant at the expense of the people of Kentucky.

It is mystifying as to why the majority wishes to run so far out of the base line for a ruling in which the defendant—in the regular course of things—does not have that much at stake. In 98% of the revocation hearings where the defendant takes the stand, he or she simply denies any wrongdoing or offers mitigating evidence. By the nature of testifying in their own defense, defendants do not incriminate themselves. In all my years presiding over these proceedings, I do not recall one withering cross-examination where the defendant broke down and offered incriminating evidence of another crime. However, in the very small percentage of cases where that might happen, the evidence could be critical to the Commonwealth in obtaining a conviction of a serious crime.

Lastly, there is another disturbing consequence of the majority opinion which I cannot abide. Our ruling here today blocks Kentucky prosecutors from ever using valuable evidence in the prosecution of serious crimes which might have been elicited from convicted felons testifying voluntarily, and with the aid of counsel, at revocation hearings. But the prosecutors just across the state line in Stewart County, Tennessee will not be so impaired. Such a ruling places our people in Kentucky with less protection than that which is afforded in 49 other states in the Union.

I have an unsettling feeling that somewhere down the line—maybe next year, maybe ten years from now—this decision will come back to haunt us. It will be used to protect a murderer from prosecution and conviction. Or it will be used by this Court to make another evidentiary and procedural ruling based on our "supervisory power" without the appropriate rule-making procedure.

I vote to affirm in *Barker* and reverse in *Jones* and uphold the trial court's decisions in both.

SCHRODER and SCOTT, JJ., join.