RENDERED: JANUARY 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0338-MR

CARL CHURCHILL                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 18-CR-001210

COMMONWEALTH OF KENTUCKY                                               APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CETRULO, JUDGE: Appellant Carl Churchill ("Churchill") appeals the order of

the Jefferson Circuit Court revoking his probation, entered on February 25, 2021.

Because it appears that the circuit court failed to make the statutory findings

required by Kentucky Revised Statutes ("KRS") 439.3106, we VACATE and

REMAND.

## BACKGROUND

In August 2019, Churchill entered a guilty plea of possession of a firearm by a convicted felon and second-degree fleeing or evading police. He was sentenced to three years' incarceration, probated for five years. Churchill's probation agreement included a condition that he "[r]emain on good behavior and refrain from further violation of the law in any respect."

In August 2020, Churchill was charged with fourth-degree assault and third-degree terroristic threatening. Subsequently, the Commonwealth filed a motion to revoke Churchill's probation. The motion argued that the new misdemeanor arrest violated the terms of Churchill's probation.

In January 2021, the Jefferson Circuit Court held a probation revocation hearing. The Commonwealth called Louisville Metro Police Detective Lauren Carby ("Carby") to testify. Carby was not the arresting officer but was later assigned as the investigating officer. Based on the arrest warrant narrative and the follow-up interview with the alleged victim, Carby testified to the allegations that lead to Churchill's arrest. Churchill and his then-girlfriend, the victim, had a verbal argument that turned physical. The victim, who was 10-weeks pregnant at the time, was on her porch when Churchill ran at her, punched her in the face, pushed her back, and she hit her head on concrete. Churchill stomped her

on her head and began kicking her stomach, saying he would kill the baby.[1] Churchill's brother pulled him off the victim and they fled the scene.

On cross-examination, Churchill asked if Carby had seen any medical records; she answered that she had not. He asked if she had looked at the victim's text messages or online activity; she answered that she had not. He asked Carby if she had spoken with Churchill or if she knew if the victim had any mental health issues; she answered that she had not. Carby stated that the investigation was ongoing and that a lot was unknown, but she had seen pictures of the victim's face after the attack.

After Carby testified, the Judge stated "there's obviously been a violation" but she was still deciding between a revocation or a sanction. Churchill pointed out that there was little investigation or corroboration. The Judge reiterated that she already found there was a violation, but she wanted to postpone her final order until the assault misdemeanor case was concluded in district court.

In February 2021, all parties returned telephonically to conclude the probation revocation hearing. Unfortunately, the record is difficult to understand and is dominated by an irrelevant conversation between a clerk and sheriff. Legal counsel for both sides can be heard in part, but very little of the Judge's words can be heard or understood. A few days after this telephonic hearing, the court issued

---

[1] She later lost the baby and blamed this attack for the loss.

an order revoking[2] Churchill's probation "[f]or reasons stated on the record[.]" This appeal followed.

## STANDARD OF REVIEW

We review probation revocation orders for an abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009)). We will reverse only if we find "the cicuit judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). *But*, if a party fails to inform the appellate court of where in the record his issue is preserved, this Court can treat the issue as unpreserved and review only for palpable error. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). Palpable errors are those "plain and obvious" errors that affect the substantial rights of a party. *Gray v. Commonwealth*, 479 S.W.3d 94, 96 (Ky. App. 2015). For a probation revocation, the circuit court's failure to make the mandatory statutory findings constitutes palpable error. *Walker v. Commonwealth*, 588 S.W.3d 453, 457-59 (Ky. App. 2019); *see also Burnett v. Commonwealth*, 538 S.W.3d 322, 324 (Ky. App. 2017). The errors in this case are unpreserved, but we

---

[2] The order does not state that probation has been "revoked," but the order does find a violation and remands Churchill into custody.

will decide on the merits and review for palpable error under Kentucky Rule of Criminal Procedure ("RCr") 10.26.

## ANALYSIS

A circuit court has "broad discretion in overseeing a defendant's probation, including any decision to revoke[.]" *Andrews*, 448 S.W.3d at 777. Historically, a circuit court could remove a person from probation if there was evidence that the probationer failed to comply with the conditions of probation or was not making satisfactory progress toward the completion of the provisions of the probation agreement. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807-08 (Ky. App. 2008); KRS 533.020(1). The Kentucky General Assembly qualified the circuit court's discretion when it enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463, in 2011. *Andrews*, 448 S.W.3d at 776 (citing 2011 Ky. Acts 4). With that package and the creation of KRS 439.3106, the General Assembly provided new criteria for voiding probation.

KRS 439.3106(1), the statute at issue, provides that supervised individuals, such as Churchill, shall be subject to:

> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Our Kentucky Supreme Court held "KRS 439.3106 must be considered [by the circuit court] before probation may be revoked." *Andrews*, 448 S.W.3d at 778-79. No longer would evidence to support at least one probation violation be sufficient to revoke probation. *Andrews*, 448 S.W.3d at 780. "By requiring trial courts to determine that a probationer is a danger to prior victims or the community at large and that he/she cannot be appropriately managed in the community before revoking probation, the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations." *Id.* at 779. The "new state of the law" does not strip circuit courts of the discretion to revoke probation "provided that discretion is exercised consistent with statutory criteria." *Id.* at 780.

That means, to revoke probation, the circuit court must specifically find: (1) that the probationer violated a condition of probation; and (2) that the violation constitutes a significant risk to prior victims or to the community at large and that the probationer cannot be appropriately managed in the community; or (3) the appropriateness of lesser sanctions. KRS 439.3106; *Andrews*, 448 S.W.3d at 777-79.

In relation to the first prong, Churchill argues that revoking his probation "on so little evidence . . . was arbitrary, unreasonable and unfair." Churchill argued that Carby had not obtained medical records, phone records, text messages, or any other supporting documentation of the alleged assault, and therefore the Commonwealth had not met its burden.

The Commonwealth disagrees, arguing their burden is only to show by the preponderance of the evidence that a violation has occurred. Carby personally interviewed the witness and the allegations were corroborated in the arrest warrant and the violation-of-supervision report.

While the burden is on the Commonwealth, probation revocations require less proof than criminal trials. *Gagnon v. Scarpelli*, 411 U.S. 778, 786-87, 93 S. Ct. 1756, 1762, 36 L. Ed. 2d 656 (1973). Hearsay evidence is admissible and circuit courts are not required to delay probation revocations until resolution of criminal charges that arise during the probationary period. *Barker v. Commonwealth*, 379 S.W.3d 116, 119, 130 (Ky. 2012). In fact, new charges *may* form the basis for revocation proceedings, and a conviction on those charges is not necessary in order to revoke probation. *Id.* at 123.

In *Barker*, his probation officer was the only witness called by either side at his revocation hearing. *Id.* at 129-30. Barker's probation officer's testimony recited the contents of a special supervision report that alerted the circuit

-7-

court of Barker's new charges, which consisted of four counts of fourth-degree assault. *Id*. The source of the officer's information on the assaults was (1) the state police arrest citation and (2) a conversation between the officer and Barker's sister. *Id*. Barker challenged the absence of physical evidence to prove a violation and that no probation violation occurred without a conviction on the new charges. *Id*. at 119-20. The circuit court found, by the preponderance of the evidence, that Barker had violated and revoked his probation. *Id*. This Court affirmed; the Kentucky Supreme Court affirmed as well.

Similarly, Churchill's revocation hearing included testimony by both the investigating officer and probation officer. The investigating detective had interviewed the victim, seen photos of her injuries, and repeated information included in the arrest warrant for a violent assault. Because the analysis was consistent with *Barker*, we find no plain or obvious errors. Therefore, we find no palpable error in the circuit court's determination that Churchill violated the terms of his probation.

Next, we look to the second and third prongs, but herein lies the problem. *Andrews* makes clear that in reviewing the sufficiency of a finding's compliance with KRS 439.3106(1), appellate courts may look to a combination of both written and oral findings concerning the factors set out in KRS 439.3106(1). Our task in this case is to determine whether the circuit court's oral findings and

written order enable us to determine the basis for its decision to revoke. *Commonwealth v. Alleman*, 306 S.W.3d 484, 487 (Ky. 2010).

Churchill argues "[t]he record does not indicate that the court properly considered and made sufficient factual findings that Mr. Churchill . . . posed a significant risk to the victim or community at large." The Commonwealth argues that the lack of findings regarding Churchill's risk is not palpable error. We disagree with the Commonwealth. As previously stated, this Court has consistently held that the circuit court's failure to make the mandatory statutory findings constitutes palpable error. *Walker*, 588 S.W.3d at 457-59; *Burnett*, 538 S.W.3d at 324. The Commonwealth attempts to distinguish these cases because the probationers in *Walker* and *Burnett* were not revoked on the basis of a new violent offense, but we find this argument unpersuasive. "[W]e must . . . conclude that the circuit court's failure to make the statutory findings required by KRS 439.3106 constitutes palpable error under [RCr] 10.26." *Walker*, 588 S.W.3d at 458. *See also Lainhart v. Commonwealth*, 534 S.W.3d 234 (Ky. App. 2017).

Churchill argues "[t]here was never a discussion of lesser sanctions short of revocation." Conversely, the Commonwealth argues the circuit court did make oral references to sanctions. At the January hearing, the circuit court stated it found a violation, but was still deciding "what kind of sanction" was warranted. Then a few minutes later, the court stated it would continue the proceedings "for a

sanction or revocation, whichever I decide." And again, the court stated it would continue the case for "some kind of sanction or revocation." The written order revoking probation is quite limited, and the oral references implied the court was aware sanctions were an option, but no express findings are in the available record. If those findings were made during the February hearing, we do not know. From what is intelligible, the circuit court did not state on the record what other sanctions were considered, why those sanctions were deemed insufficient, nor whether the court believed Churchill would be at risk of future criminal behavior.

## CONCLUSION

Accordingly, we must follow *Walker* and hold that the circuit court did not make any clear findings, in either its written or oral rulings, related to whether Churchill constituted a significant risk to the prior victim or the community at large; that he could not be appropriately managed in the community; or that lessor sanctions were considered and deemed inappropriate, pursuant to KRS 439.3106(1). Therefore, we hold that under palpable error standard of review, the circuit court's decisions must be vacated for full consideration of the statutory criteria and the entry of appropriate findings, as held in *Andrews*.

For the foregoing reasons, the order of the Jefferson Circuit Court revoking Churchill's probation is VACATED, and this matter is REMANDED for further proceedings in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Tricia Lister
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky