RENDERED: APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0857-MR

GARY HAVEN COCHRAN                                                    APPELLANT

APPEAL FROM LAWRENCE CIRCUIT COURT
v.          HONORABLE JOHN DAVID PRESTON, JUDGE
ACTION NOS. 17-CR-00032, 17-CR-00048, AND 17-CR-00081

COMMONWEALTH OF KENTUCKY                                               APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE: Appellant Gary Cochran challenges the revocation of his

probation for failure to comply with the dictates of KRS[1] 439.3106. Because we

agree that the findings in this case fail to comport with the requirements of the

---

[1] Kentucky Revised Statute.

statute and due process, we vacate the judgment of the Lawrence Circuit Court and remand for additional proceedings.

Pursuant to a January 2018 guilty plea to one count of theft by unlawful taking and being a first-degree persistent felony offender, Cochran was sentenced to ten years' incarceration, probated for a period of five years. In April 2019, the Commonwealth moved to revoke Cochran's probation[2] stemming from his March 2019 conviction for first-degree possession of a controlled substance, first-degree fleeing or evading police, operating a vehicle under the influence of alcohol/drugs, failure to maintain insurance, no/expired registration plates, and being a first-degree persistent felony offender, for which he was sentenced to 20 years' incarceration.[3] The evidence upon which that conviction was based included the testimony of Lawrence County Deputy Mark Wheeler who testified that he had engaged in patrols in response to residents' complaints regarding Cochran; that he was aware of outstanding warrants for Cochran's arrest; that he observed Cochran's vehicle travelling at approximately 75 to 80 miles per hour on Highway 645 near the Martin County line; and that after he initiated a pursuit of Cochran, he sped up and changed lanes without signaling. Deputy Wheeler stated

---

[2] The original revocation motion was based upon supervision and other violations which for some reason had not been included in the record. Thus, the revocation hearing focused solely on Cochran's March 2019 conviction.

[3] Lawrence County Case Number 18-CR-00174.

that he followed Cochran into Martin County with his emergency lights engaged at which point Cochran turned into a service station parking lot where several people were moving about. Cochran then exited the parking lot and Deputy Wheeler observed the vehicle proceed down Highway 1884, weaving from side to side, occasionally dropping off the side of the road and veering into the lanes of oncoming traffic. After Cochran finally stopped his vehicle, he admitted to Deputy Wheeler that he had used methamphetamine and that he was still feeling the effects of the substance. Deputy Wheeler stated that upon approaching Cochran's vehicle he could see a loaded syringe and several baggies containing a crystalline substance which Cochran admitted were methamphetamine. He also admitted that he had intended to inject the contents of the syringe but was unable to because of Deputy Wheeler's pursuit.

At the April 26, 2019 hearing conducted on its revocation motion, the Commonwealth asked the trial court to take judicial notice of Cochran's recent conviction.[4] Cochran's counsel responded: "I believe that's correct, your Honor. Under the terms and conditions of the original probation agreement, any new convictions would, of course, violate that—the terms and conditions." Stating that it would take judicial notice of the trial, the presentence investigation report, and

---

[4] The circuit judge presiding on the revocation motion was the same judge who presided over the trial which was the subject of the revocation proceeding.

Cochran's criminal record, the trial court issued findings on the record that there was no substitute for incarceration and that Cochran was a risk to the community. A subsequent written order entered the same date provided:

> This matter having come before the Court upon the motion of the Commonwealth and the Court having heard arguments of counsel, reviewed the record before it, and being otherwise fully and sufficiently advised hereby FINDS that the violations of the Defendant constitutes a significant risk to prior victims and/or the community at large and the Defendant cannot be appropriately managed in the community.
>
> Based upon these FINDINGS, the Court ORDERS that the probation of the Defendant is hereby REVOKED and he/she shall be remanded to the Department of Corrections for further placement.

This appeal followed.

Subsequent to the filing of the briefs in this appeal, the Supreme Court of Kentucky issued an October 2020 opinion reversing and remanding for a new trial the conviction upon which the revocation of Cochran's probation was based.[5] That reversal was predicated solely upon structural error stemming from the trial court's failure to conduct a hearing in compliance with the baseline requirements set out in *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Our review of this appeal therefore focuses not only upon the arguments

---

[5] 2019-SC-0263-T and 2019-SC-0349-MR.

presented but also the effect, if any, of the reversal of the judgment which formed

the basis for the revocation of Cochran's probation.

We start by citing the language of KRS 439.3106(1), which provides as

follows:

Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

In *Commonwealth v. Andrews*, the Supreme Court of Kentucky interpreted

compliance with these statutory mandates as "conditions precedent" to the

revocation of a probationer's sentence:

More specifically, KRS 439.3106(1) requires as conditions precedent to revocation that the probationer's failure to comply with the terms of probation constitutes "a significant risk to [his] prior victims . . . or the community at large," and that the probationer "cannot be appropriately managed in the community. . . . Indeed, the plain language of the statute lends itself to only one conclusion—both the trial court and the Department of Corrections' officers must assess a probationer's conduct

> in light of KRS 439.3106 and proceed in accordance with the statute.

448 S.W.3d 773, 777 (Ky. 2014). The Supreme Court further explained that

> [b]y requiring trial courts to determine that a probationer is a danger to prior victims or the community at large and that he/she cannot be appropriately managed in the community before revoking probation, the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations.

*Id.* at 779 (footnote omitted).

Thus, the Supreme Court concluded that in applying KRS 439.3106(1), a trial court can "conclude with some certainty that the imposition of some other accountability measure would be fruitless, as the probationer both poses a risk and is not manageable in the community." *Id.* at 779-80. Therefore before probation can be revoked, the trial court is required "to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community . . . ." *Id* at 780.

The critical question thus becomes what constitutes a *finding* in compliance with the statute. *Andrews* makes clear that in reviewing the sufficiency of a finding's compliance with KRS 439.3106(1), appellate courts may look to a combination of both written and oral findings concerning the factors set out in KRS 439.3106(1). However, the Supreme Court subsequently cautioned that a

different rule might obtain where the appellate court is faced with "general conclusory reasons" or "a record from which we were 'unable to determine the basis of the [trial] court's decision to revoke probation'" *Commonwealth v. Alleman*, 306 S.W.3d 484, 487 (Ky. 2010) (quoting *United States v. Barth*, 899 F.2d 199, 202 (2d Cir. 1990), and *United States v. Smith*, 767 F.2d 521, 524 (8th Cir. 1985)). Our task in this case is to determine whether the trial court's oral findings and written order enable us to determine the basis for its decision to revoke.

Unlike the situation in *Alleman* in which the trial court heard evidence at the revocation hearing that Alleman had absconded from probation supervision and, in turn, made specific findings based upon evidence indicating that he had indeed violated the terms of his probation, the record in Cochran's case does not enable this Court to conduct a thorough review. The recording of the probation revocation hearing in this matter consists almost solely of the Commonwealth's request that the court take judicial notice of Cochran's recent criminal conviction and his counsel's acquiescence in that request. Coupled with the trial court's mere parroting of the statutory language without reference to specific *factual* findings concerning the nature of the conduct from which it concluded that Cochran posed a danger to prior victims and/or the general public and that he could not be

adequately supervised in the community, the video recording of the revocation

"hearing" provides little, if anything, of substance to assist in our review.

It is also important to reiterate, however, the Supreme Court's

emphasis in *Andrews* that the trial court's traditional discretion over probation

revocation is in no way weakened by the application of the mandatory language of

KRS 439.3106. To the contrary, *Andrews* holds that the statute merely "reflects a

new emphasis in imposing and managing probation, it does not upend the trial

court's discretion in matters of probation revocation, provided that discretion is

exercised consistent with statutory criteria." *Andrews*, 448 S.W.3d at 780.

This brings us to the impact of the trial court having taken judicial

notice of a conviction which has now been reversed for a new trial. The decision

of the Supreme Court of Kentucky in *Barker v. Commonwealth*, 379 S.W.3d 116,

122 (Ky. 2012), offers guidance.:

> Consequently, we hold that *Tiryung* [*v. Commonwealth*, 717 S.W.2d 503, 504 (Ky. App. 1986),] remains good law. An individual's probation may be revoked any time before the expiration of the probationary period when the trial court is satisfied by a preponderance of the evidence presented in a revocation hearing that the probationer violated a condition of probation. **Although new charges may form the basis for revocation proceedings, a conviction on those charges is not necessary in order to revoke probation.**

*Id*. at 123 (emphasis added). A logical extension of the holding in *Barker* is that

despite the reversal of a conviction supporting revocation of probation, a trial court

could nevertheless conclude, based on evidence adduced at a revocation hearing, that there is sufficient proof of violation of the terms of probation to support a revocation decision. In other words, *Barker* makes clear that a *conviction* is not essential to a decision to revoke.

The problem here is that there was no proof of Cochran's conduct at the revocation hearing, merely a request that the trial court take judicial notice of Cochran's conviction. This Court made clear in *Tiryung*, that "the due process which must be afforded to one about to lose his status as a probationer or parolee need not come with the 'full panoply of rights accorded to one not yet convicted . . . .'" 717 S.W.2d at 504 (citations omitted.) Further, *Tiryung* noted that this Court had previously upheld a probation revocation based on statements obtained from an appellant who had not been given *Miranda* warnings, and, in addition, cited precedent for the proposition that hearsay could be properly admitted in these "informal type of hearings." *Id*. (citation omitted). Nevertheless, even minimal due process requires that "a written statement is made by the fact finder(s) as to the evidence relied on" and the reasons for the revocation. *Murphy v. Commonwealth*, 551 S.W.2d 838, 840 (Ky. App. 1977). Thus, we are convinced that the absence of specific findings concerning the evidence supporting probation revocation simply does not comport with minimum due process standards nor the express mandates of KRS 439.3106 as explained in *Andrews, supra*.

Finally, we are not persuaded by Cochran's argument that he was not afforded a decision by a neutral and detached factfinder. Citing *Baumgardner v. Commonwealth*, 687 S.W.2d 560 (Ky. App. 1985), Cochran insists that he was deprived of the due process requirements set out in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), because the same trial judge presided over both the revocation proceeding and his trial for the conviction used to revoke. In determining that Baumgardner had been denied procedural due process "under the laws of this Commonwealth as stated in *Murphy*, [*supra*]" this Court held:

> [T]he appellant was denied due process because the probation hearing was not held before a neutral and detached hearing body. Judge Meade presided over both cases, and he immediately responded to the acquittal by issuing the order for the revocation hearing. It would appear from the transcript that this hearing was a mere formality.

687 S.W.2d at 561. In our view, the facts underpinning the decision in *Baumgardner* are distinguishable from those at work in Cochran's case.

Unlike the situation in *Baumgardner*, it was the Commonwealth which moved to revoke Cochran's probation, not the trial judge, and its motion was based upon his conviction on several charges. Further, nothing in our review of the video record disclosed any bias or prejudice on the part of the trial judge, nor does Cochran claim bias or point to evidence thereof. In addition, we cannot

-10-

conclude that *Baumgardner* imposes a *per se* rule that the same trial judge cannot preside over both a trial and a revocation proceeding involving the same defendant. In fact, the *Baumgardner* Court's reliance on the opinion in *Murphy* dispels such a contention. In explaining that the procedure set out in *Morrisey* did not apply to Murphy's situation, this Court instructed:

> **Since the appellant was tried by the circuit court, we do not believe that the Morrissey decision requires a preliminary hearing as well as a revocation hearing.** The Supreme Court was speaking in the terms of a procedure before an independent administrative officer (not a parole officer nor necessarily a judicial officer) to determine if there is probable cause or reasonable ground to believe that an act has been committed constituting violation of conditions of probation, while the second hearing must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. **We do not believe the foregoing procedure would apply where a court of competent jurisdiction, such as the Mason Circuit Court, conducted the appropriate inquiry.**

551 S.W.2d at 840 (emphasis added). Again, Cochran does not argue, and nothing in our review of the record suggests, that the trial judge in this case acted as anything other than a neutral and detached factfinder. Accordingly, we cannot conclude that Cochran was deprived of due process when the same judge presided over both proceedings.

In sum, although the order of the trial court recites the requisite statutory findings for revoking Cochran's probation, the record does not contain

-11-

any oral or written statement of the evidence relied on by the trial court in reaching the ultimate conclusions that he posed a risk to the community and that he could not be successfully managed in the community. Our Supreme Court's decision in *Alleman* unequivocally presupposes the entry of oral or written findings concerning the evidence supporting the findings required by KRS 439.3106:

> The trial court, in turn, made findings that the evidence of Appellee absconding from probation supervision indicated that he had violated the terms of his probation. This finding matches with the condition of probation that Appellee "[r]eport to the probation officer as directed and comply with all written rules, regulations or stipulations imposed by him and the Department of Corrections, Division of Probation and Parole." **Thus, the recording of the probation revocation hearing in this matter provides an adequate record of the reasons for revocation and the evidence in support thereof.** Further, the reasons given by the trial court to support the revocation order provide sufficient grounds to revoke Appellee's probation. **Since Appellee was fully notified of the court's findings, and the basis of the revocation at the hearing, the due process requirement, as expressed in *Morrissey*, was satisfied.**

306 S.W.3d at 488 (emphases added).

Accordingly, we vacate the trial court's order revoking Cochran's probation and remand this case for a new revocation hearing and the entry of an order delineating appropriate findings as to the evidence which supports its ultimate conclusion regarding revocation.

-12-

ALL CONCUR.

BRIEFS FOR APPELLANT:

Brandon Neil Jewell
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

M. Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky