RENDERED: APRIL 3, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1204-MR

DANNY GAMBREL            APPELLANT

v.   APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 17-CR-002777

COMMONWEALTH OF KENTUCKY       APPELLEE

AND

NO. 2024-CA-1205-MR

DANNY GAMBREL            APPELLANT

v.   APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 17-CR-003586

COMMONWEALTH OF KENTUCKY       APPELLEE

AND

NO. 2024-CA-1206-MR

DANNY GAMBREL            APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 18-CR-003038


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, ECKERLE, AND KAREM, JUDGES.

ECKERLE, JUDGE:  Appellant, Danny Gambrel ("Gambrel"), seeks reversal of

the Orders of the Jefferson Circuit Court, Division Four, Revoking Probation dated

September 5, 2024.  After careful review, we affirm, as the Trial Court made the

mandatory statutory findings, and the record on appeal supports that Court's

rulings.

I.      **Factual and Procedural Background**

        This appeal follows the Trial Court's revocation of Gambrel's

probation for three separate convictions and in response to his long history of

violating the terms of his probation.  On September 28, 2017, Gambrel appeared

before the Trial Court and pled guilty to two counts of first-degree possession of a

controlled substance, methamphetamine.  Record on Appeal ("ROA") 17-CR-

2777, pp. 17-20.[1]  Pursuant to the Commonwealth's plea offer, the Trial Court granted Gambrel three years of pre-diversion in lieu of a one-year sentence on each count, to be served concurrently.  *Id.*, pp. 21-23.[2, 3]

Unfortunately, Gambrel's compliance with the terms of the diversion program was short-lived.  Sixty-days later, on November 29, 2017, the Jefferson County Grand Jury indicted Gambrel on new charges of:  (1) first-degree criminal mischief for causing substantial damage to vehicles and breaking the windows of an adjacent business; and (2) second-degree escape from the home incarceration program ("HIP") when he failed to return from his Court-ordered job release.  ROA 17-CR-3586, p. 11-12.  Gambrel's arrest warrant on these charges also

---

[1] The record on appeal comprises three criminal cases (Nos. 17-CR-002777, 17-CR-003586, and 18-CR-003038), each containing a separately paginated volume.  Citations concerning probation and revocation records contained in all volumes will be "ROA 18-CR-3038, [page number]," and citations to specific case numbers will be "ROA [case number], [page number]."

[2] The Presiding Judge in this appellate matter was the Trial Judge in Jefferson Circuit Court, Division 7, who accepted the plea and agreed Order to pre-diversion almost a decade ago and retains no personal knowledge of it.  No adversarial proceedings occurred in that case in Division 7, and this case and others involving Gambrel proceeded thereafter for many years in Division 4 before two other Jefferson Circuit Judges.  No reason appears to recuse from this matter, and no one has raised the issue or requested recusal.

[3] Gambrel's arrest warrant for the drug offenses alleged that he was noncompliant with maintaining his current address with the Kentucky Sex Offender Registry.  ROA, 17-CR-2777, p. 4.  In 2004, Gambrel was convicted of third-degree sodomy, a felony, and second-degree sexual abuse, a misdemeanor.  *See* Case No. 04-CR-002932.  However, neither Gambrel nor the Commonwealth disclosed the felony, which was more than 10 years old, when recommending diversion to the Trial Court.  ROA, Video Record ("VR"), 9/28/2017, 9:10:35-9:20:10.  Diversion is supposed to be reserved for first-time felony offenders, but Gambrel was already a convicted felon when the Commonwealth offered to divert his newer felony charges.

revealed that he had failed to update his address as a convicted sex offender as required by the Kentucky Sex Offender Registry. *Id.*, p. 2.

The Commonwealth moved to remove him from diversion for his drug conviction based upon the criminal indictment, and Gambrel stipulated to the violations for receiving new charges and agreed to be removed from diversion and be sentenced to serve his one year of imprisonment without requesting probation or a lesser alternative sanction. ROA 17-CR-2777, pp. 37-39, VR, 11/30/2017, 8:34:50-8:35:10. On December 20, 2017, Gambrel pled guilty to the charges of first-degree criminal mischief and second-degree escape. Pursuant to his agreement with the Commonwealth, the Trial Court sentenced him to two years' incarceration – one year on each count – to run consecutively to each other and to his prior sentence in case No. 17-CR-002777, for a total of three years. ROA 17-CR-3586, p. 23-24. The Trial Court also ordered Gambrel to pay restitution in the agreed sum of $6,516.82. *Id.*, pp. 21-22.

On April 5, 2018, Gambrel sought release on shock probation in both cases. ROA 17-CR-2777, pp. 40-42; 17-CR-3586, pp. 25-27. On May 11, 2018, the Trial Court consolidated the two cases[4] and granted shock probation for the balance of Gambrel's three-year sentence for a period of four years subject to

---

[4] The reasons for the Circuit Judge in Division 4 (Judge Charles Cunningham, Jr., presiding at the time before his retirement) to depart from the traditional practice and retain the case rather than send it back to Division 7, who had the senior case, is not clear from the record.

several conditions, including that he refrain from violating the law, remain drug and alcohol free, and submit to random drug and alcohol testing. ROA 17-CR-2777, pp. 46-47; 17-CR-3586, pp. 31-32.

Yet again, and also in very short order, Gambrel was accused of new offenses, allegedly in violation of the terms of his shock probation. On May 18, 2018, Gambrel was arrested on charges of violating an interpersonal protective order ("IPO") and third-degree burglary for allegedly breaking and entering and taking cash from the business where the subject of the IPO worked. ROA 18-CR-3038, p. 8. Following this new arrest, the Division of Probation and Parole ("P&P") reported that Gambrel violated the conditions of his shock probation by absconding supervision and failing to report as instructed on May 28, 2018, and thereafter. Violation of Supervision Report ("VSR"), 6/13/2018, ROA 17-CR-2777, pp. 50-51

In June 2018, the Commonwealth filed a motion to revoke. ROA 17-CR-2777, p. 49-53.[5] On July 2, 2018, the Trial Court issued a bench warrant for Gambrel's arrest, and he was taken into custody on July 21, 2018. *Id.*, p. 56-57. Pending consideration of the new felony and other misdemeanor charges in

---

[5] The Commonwealth originally filed this motion to revoke in Jefferson Circuit Court, Division 7, where the Presiding Judge in this matter was serving as Trial Judge. Since the Circuit Judge in Division 4 (Judge Charles Cunningham, Jr., presiding) had already taken over the case and granted shock probation, the motion was directed back to Division 4. ROA 17-CR-2777, p. 54.

Jefferson District Court, the Trial Court continued the motion to revoke for multiple status conferences. ROA, VR, 10/3/2018, 10/10/2018. In October 2018, by agreement of the Commonwealth and Gambrel, the Jefferson District Court referred Gambrel's third-degree burglary charge to the Rocket Docket. ROA, 18-CR-3038, pp. 1-5. The Commonwealth offered Gambrel a plea agreement of two years' imprisonment to run consecutively to his three years' incarceration on his previous charges, for a total of five years. *Id.*, pp. 29-30. The Commonwealth advised Gambrel that it would object to probation. Gambrel agreed and entered a plea of guilty, and the matter was continued for sentencing. *Id.*, p. 32-33.[6]

On December 19, 2018, Gambrel appeared before the Trial Court for the Commonwealth's motions to revoke his probation in cases Nos. 17-CR-002777 and 17-CR-003586, and for sentencing on his guilty plea to third-degree burglary in case No. 18-CR-003038. ROA VR, 12/19/2018, 3:12:46.[7] At his appearance, Gambrel had been in custody for over 150 days. *Id.*, 3:14:01-35.

Gambrel asked for continued probation on his prior and new convictions because he claimed that most of his criminal history was nonviolent and substance-abuse related. His counsel explained that he had previously

_____

[6] The Trial Judge in Jefferson Circuit Court, Division 6, received the Rocket Docket case, accepted the plea, issued the Order, and continued the matter to December 19, 2018, for sentencing. Division 4 then took over this case as well.

[7] From this point forward, the Jefferson Circuit Court, Division 4 kept all three cases, even though it did not have the senior action.

overcome his alcohol addiction but subsequently became addicted to methamphetamine followed by heroin, for which he needed treatment. Gambrel's counsel also explained that Gambrel had been accepted into a rigorous, residential, substance-abuse-treatment facility, which met Gambrel's unique circumstances as a convicted sex offender. Gambrel had consented to and been screened for Vivitrol therapy for his heroin use. Finally, he told the Trial Court that he had employment prospects as well as family and community support for his rehabilitation. ROA VR, 12/19/2018, 3:14:35-3:22:50.

The Commonwealth objected to probation, outlining the history of Gambrel's failure to comply with the terms of the diversion program and shock probation and summarizing Gambrel's series of felony offenses. The Commonwealth argued that Gambrel posed a significant danger to the community and himself and could not be managed within the community; it asked the Trial Court to sentence him to five years to serve. *Id.*, 3:22:51-3:27:04.

After allowing unsworn commentary from Gambrel, the Trial Court reminded him that in May 2018, when he was seeking shock probation, Gambrel had promised that he would get drug treatment, make restitution, and try to turn his life around. He not only failed to do so, but also added a new felony charge. The Trial Court recognized that Gambrel did have a seemingly-better, updated plan in place, including a sober-living facility, daily substance abuse therapy, and Vivitrol

to help with withdrawal and cravings. However, the Trial Court was not entirely convinced that Gambrel was a good risk for probation. *Id.*, 3:32:01-3:34:38.

In order to incentivize Gambrel to comply with the conditions of probation and get more serious about turning his life around, the Trial Court proposed its own option. Gambrel could accept the Commonwealth's offer of two years to serve on his new charges, but the Trial Court would revoke his probation on the prior charges and sentence him to the agreed total of five years. Alternatively, the Trial Court would continue his shock probation on the prior offenses and agree to probation on the new case, if Gambrel would agree to the maximum sentence of five years on the burglary charge (versus the Commonwealth's offer of two years). Under the second option, Gambrel faced eight years' imprisonment (three years longer) if he failed once again to succeed on probation. *Id.*, 3:34-39.

After conferring with counsel and against his counsel's advice, Gambrel accepted the Trial Court's alternate option, and the Trial Court found his acceptance to be knowing and voluntary; it then sentenced him to five years' incarceration for third-degree burglary, probated for five years. ROA VR, 12/19/2018, 3:40-44. Once again, Gambrel's probation obligated him to specified conditions, many of which were the same, including to: remain on good behavior and not violate the law; comply with all instructions and rules of P&P; remain drug

and alcohol free and submit to random drug testing; obtain and maintain employment; reside at a suitable sober living residence; continue a regular course of Vivitrol therapy; agree to graduated sanctions for failure to comply; and pay all applicable fees for supervision. ROA 18-CR-3038, pp. 36-38. Also, a separate Restitution Order required Gambrel to pay restitution in the amount of $850.14 in monthly payments in the amount of $52.50. *Id.*, pp. 39-40.

In less than six months, Gambrel once again violated the terms of his probation. In April of 2019, he was arrested for shoplifting, and by September, P&P reported that Gambrel absconded, failed to submit to drug testing, and failed to complete his Court-ordered drug treatment. ROA 18-CR-3038, pp. 42-49. The VSRs also advised that Gambrel admitted to using methamphetamines on multiple occasions. *Id.* On October 3, 2019, the Commonwealth filed a supplemental motion to revoke Gambrel's probation for absconding, failing to complete his Court-ordered substance abuse treatment, and fleeing the P&P office before taking a drug-screening test. *Id.*, pp. 50-52.

Gambrel appeared on February 26, 2020, and stipulated to the probation violations. ROA, VR, 2/26/2020, 2:34-2:36. Nonetheless, he and his counsel asked the Trial Court to continue his probation. He said that he had begun private drug treatment and claimed that he did not require Vivitrol treatment despite his prior admission to using heroin. He stated that he had secured a job and

maintained a consistent residence. *Id.*, 2:37-41. Over the Commonwealth's objection, the Trial Court agreed to continue Gambrel's probation, noting that he was still a poor risk but giving Gambrel one last chance. *Id.*, 2:48-2:50:30. In candor, Gambrel's counsel advised the Trial Court that she had been made aware of possible criminal citations pending for Gambrel but did not have additional information. *Id.*, 2:50:50. After the hearing, Gambrel was served with misdemeanor citations charging him with four counts of second-degree possession of a forged instrument and a criminal summons for fourth-degree assault of his roommate. The Trial Court issued a written order denying revocation on February 27, 2020. ROA 18-CR-3038, p. 54.

In less than a month, on March 17, 2020, the Commonwealth filed its fourth motion to revoke Gambrel. *Id.*, p. 55. According to the attached VSR, Gambrel had failed to report to P&P for a drug test. When Gambrel finally returned some days later, the P&P Officer, upon seeing Gambrel walking with an unusual gait, searched him and located a bottle and tubing taped from his torso to his penis. The officers removed the device and took Gambrel into custody. Upon questioning, Gambrel ultimately admitted that he used the device to defraud the drug screening process because he had used methamphetamine. *Id.*, pp. 55-64. On March 27, 2020, upon the agreement of the parties, the Trial Court placed Gambrel on HIP (where he had absconded from before) pending a hearing on the

Commonwealth's motion to revoke. *Id.*, p. 65. Within a few days, Gambrel admitted to using methamphetamine while on HIP and was taken into custody. *Id.*, pp. 66-67.

On June 23, 2020, Gambrel appeared before the Trial Court on the motion to revoke. As the misdemeanor charges from February were still pending, the parties agreed to continue the revocation hearing until those charges could be resolved. The parties also agreed that Gambrel could be released back on HIP, again. Several status hearings were held during 2020 and into 2021. On May 10, 2021, the Trial Court denied the motion to revoke but sanctioned Gambrel for his violations by denying him credit for the four months he spent in custody between March and June 2020. ROA 18-CR-3038, p. 10.

In 2022 and 2023, Gambrel appeared before the Trial Court on multiple other occasions on additional motions to revoke and related hearings.[8] The violations included new charges for drug possession, testing positive for drugs, failures to report, and failures to make restitution payments. Gambrel's counsel, the Commonwealth, and the Trial Court collectively gave Gambrel even more opportunities to reenroll in intensive substance abuse treatment and seek employment.

---

[8] On January 2, 2023, Judge Julie Kaelin assumed office as Jefferson Circuit Court Judge for Division 4, serving as Trial Judge for the remaining proceedings in these cases.

On January 30, 2024, the Commonwealth filed its most recent motion to revoke for Gambrel's failure to make any significant payments to the Crime Victim's Compensation Fund for the restitution he owed in cases 17-CR-3586 and 18-CR-3038. ROA 18-CR-3038, pp. 105-07. The Commonwealth supplemented its motion to revoke on August 14, 2024, after Gambrel was arrested for more charges, namely second-degree assault and first-degree criminal mischief. *Id.*, pp. 110-11. On September 4, 2024, the Trial Court conducted another revocation hearing on all three cases: 17-CR-2777, 17-CR-3586, and 18-CR-3038. ROA, VR, 9/4/2024, 1:08-1:51. The Commonwealth called two witnesses, Louisville Metro Police Detective Smallwood and P&P Officer Adrienne Coffey.

Detective Smallwood testified that he investigated the most recent criminal complaint against Gambrel and issued an arrest warrant for second-degree assault and first-degree criminal mischief. ROA, VR, 9/4/2024, 1:10-1:14:30. Detective Smallwood recounted the following alleged facts leading up to the felony charges. On July 7, 2024, Gambrel drove his van to the premises of a private, women's-only, residential, substance-abuse-treatment facility and walked inside. When the house manager of the facility asked him to leave, Gambrel refused. The house manager called the facility's off-site security guard, who, upon arriving, also directed Gambrel to vacate. The guard escorted Gambrel outside. After returning to and starting his vehicle, Gambrel accelerated with the door open,

-12-

striking the security guard with the open door and pinning him against a garage. The victim sustained several large contusions on his arms and legs, bruised ribs, and chest pain. He required hospital treatment and several days of bed rest to recover. After the alleged assault on the security officer, Gambrel accelerated and damaged the facility's fence, causing $2,300 in damage. Subsequently, Detective Smallwood interviewed the witnesses, reviewed the medical records of the injured victim, and reviewed the body-cam footage of the officers who first responded to the scene. *Id.*, 1:27-1:28

Officer Coffey, the P&P officer assigned to supervise Gambrel, summarized three separate VSRs that she had filed with the Trial Court between January and August 2024, reporting Gambrel's failure to pay restitution and supervision fees, admission to using methamphetamine, and arrest on the new felony charges. ROA, VR, 9/4/2024, 1:28:30-1:33:40. Although not previously reported, Officer Coffey also testified that she had difficulty reaching Gambrel for weekly telephonic reporting even while he was serving on HIP. Finally, she reported that, despite repeated efforts by P&P, Gambrel had showed virtually no progress toward obtaining or maintaining employment. *Id.*, 1:33:45-1:37:40.

At the conclusion of the testimony, Gambrel stipulated that he had failed to pay restitution, except for a few small payments. ROA, VR, 9/4/2024, 1:43-44. His counsel acknowledged that the Commonwealth had met its burden to

show by a preponderance of the evidence that he had admitted to using drugs, failed to find and maintain employment, and been charged with the new felonies. *Id.*, 1:44-45. Regarding the new charges, Gambrel's counsel stated that, while they were not seeking to litigate the new case, Gambrel had a different version of the story. *Id.*, 1:45-46. Gambrel also argued that, except for owing restitution, his supervision on some of the charges had been set to expire. *Id.*, 1:46. Yet again, Gambrel asked for the Court to release him back to HIP with a sanction, in lieu of prison. *Id.* The Commonwealth summarized the testimony presented, highlighted Gambrel's history of 17 total violations of probation and 15 bench warrants, argued that he was dangerous to the community and could not be managed in the community, and asked for revocation of his probation in all three cases. *Id.*, 1:47:15-1:49.

The Trial Court reminded Gambrel that, in December 2018, it was his own choice, against the advice of counsel, to accept the Trial Court's offer of a maximum sentence of five years in order to extend Gambrel's probation versus going to prison at that time. ROA, VR, 9/4/2024, 1:49:30-1:50. While serving his probated sentence totaling eight years in three cases, Gambrel was convicted of four separate misdemeanors and a felony within a year. Moreover, it was evident to the Trial Court that Gambrel was doing the very least to meet the conditions of his release, and that Court believed that the new felony arrest was the last straw.

*Id.*, 1:50-1:50:30. The Trial Court stated on the record: "I do not believe that you have made every effort to pay this restitution by a long stretch. And, more importantly, with this new case, I do not believe that you are able to be supervised in the community without being a danger. So, I am granting the motion to revoke and imposing eight years to serve." ROA VR, 9/4/2024, 1:50:30-50. The Trial Court issued its written Orders Revoking Probation on September 5, 2024, which were identical in each case, and recorded its finding that Gambrel violated the terms of his probation, granted the Commonwealth's motion to revoke, and remanded Gambrel to serve a total of eight years. ROA 18-CR-3038, pp. 115. It is from this Order that Gambrel appeals.

## II.     Standard of Review

When reviewing a Trial Court's decision to revoke a defendant's probation, this Court applies an abuse-of-discretion standard of review. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). An abuse of discretion occurs only where "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). As applied to probation revocation, "we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the

law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing

*Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)). Moreover, "a trial

court's decision to revoke probation is generally 'not an abuse of discretion if there

is evidence to support at least one probation violation.'" *Brann v. Commonwealth*,

469 S.W.3d 429, 431 (Ky. App. 2015) (quoting *Lucas v. Commonwealth*, 258

S.W.3d 806, 807-08 (Ky. App. 2008)).

## III. Analysis

### A. Kentucky Statutes Confer Trial Courts with the Discretion to Revoke Probation and Impose Incarceration

It is axiomatic that "the power to revoke probation is vested in the

trial courts and in the trial courts alone." *Brann*, 469 S.W.3d at 432 (citing

Kentucky Revised Statute ("KRS") 533.010 *et seq.*). Kentucky statutes reflect a

Trial Court's "broad discretion in overseeing a defendant's probation." *Id*. This

includes "any decision to revoke: '. . . [c]onditions of probation [that] shall be

imposed as provided in KRS 533.030, but the court may modify or enlarge the

conditions or, if the defendant commits an additional offense or violates a

condition, revoke the sentence at any time prior to the expiration or termination of

the period of probation.'" *Id.* (quoting KRS 533.020(1)).

With the enactment of the 2011 Corrections Reform Bill, HB 463,

codified at KRS 439.3106, the General Assembly established specific criteria that

Trial Courts shall consider when evaluating whether an offender's probation

should be revoked or lesser interventions imposed.  KRS 439.3106 provides in relevant part:

> (1) Supervised individuals shall be subject to:
>
>> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
>>
>> (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

KRS 439.3106(1)(a)-(b).

Most recently, in *Nantz v. Commonwealth*, we conducted a thorough analysis of the structure of KRS 439.3106(1)(a)-(b), and we apply that reasoning to this case.  728 S.W.3d 804, 81-11 (Ky. App. 2026).  The conjunction "or" in KRS 439.3106(1) conveys that once a Trial Court determines a probation violation, it is within the Trial Judge's discretion to revoke a probationer, possibly subjecting him to incarceration, *or* impose sanctions other than incarceration.  *Id.*; *see also* *McClure*, 457 S.W.3d at 732; *Andrews*, 448 S.W.3d at 777.  However, as we stated in *Nantz*, "[t]he General Assembly's use of the conjunction 'and' in subsection

(1)(a) denotes the proscription against revocation of an individual's supervised probation and the imposition of incarceration absent the establishment of two grounds[:] to wit, (1) the supervised individual's incompliant behavior demonstrates that the individual is a significant risk to the prior victims or the community, and (2) the individual cannot be managed within the community." 728 S.W.3d at 811 (citing *Andrews*, 448 S.W.3d at 780).

In this instance, Gambrel does not and cannot contest his repeated and substantial violations of the terms of his probation under multiple grounds. At his final revocation hearing, as well as on prior occasions, he stipulated to the violations, including substance abuse, failure to report to P&P, failure to pay restitution, failure to find and maintain employment, and allegations that he had committed new crimes. Rather, he argues that the Trial Court improperly applied KRS 439.3106 in finding that he was a risk to the community and could not be effectively managed. He argues that the new charges levied against him were only allegations, and there was no other showing that he was a danger to the community. Additionally, he argues that the Trial Court should have come to a different conclusion considering that he was trying to find a job, trying to make restitution payments, and had been appropriately managed in the past. Finally, he argues that the Trial Court abused its discretion because its findings were not supported by "current violations." Appellant's Brief, pp. 9-10.

When presented with similar challenges to a Trial Court's discretion, this Court has turned "[o]ur analysis . . . to two intertwined questions: Whether the evidence of record supported the requisite findings that [the probationer] was a significant risk to, and unmanageable within, his community; and whether the trial court, in fact, made those requisite findings." *McClure*, 457 S.W.3d at 732. For efficiency, we consider these questions in reverse order.

## B. Sufficiency of the Trial Court's Findings

First, we consider whether the Trial Court made the requisite findings that Gambrel was a significant risk to, and unmanageable within, the community in a manner that satisfies the statutory requirements of KRS 439.3106(1)(a). The Trial Court issued its findings orally on the record, then issued its written Orders Revoking Probation. In stating its findings from the bench, the Trial Court did not directly quote the language used in KRS 439.3106(1)(a). Nonetheless, the Trial Court explicitly found that Gambrel was not "able to be supervised in the community without being a danger" to that community. Moreover, the Trial Court prefaced its findings with a clear evidentiary basis, which is discussed *infra*.

Additionally, Gambrel's reliance on *Helms v. Commonwealth* is misplaced and does not support his argument that the Trial Court's findings were insufficient. 475 S.W.3d 637 (Ky. App. 2015). In making its findings, a Trial Court is under no obligation to "provide detailed explanations for the findings

-19-

required by KRS 439.3106." *Kendrick v. Commonwealth*, 664 S.W.3d 731, 735 (Ky. App. 2023) (citing *New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019)). Furthermore, "[t]hese findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

We reiterate here what we stated in *Nantz*: "The Trial Court is under no obligation to elaborate as to the reasoning behind its conclusion that [a probationer's] actions made him a significant risk to the community at large and cannot be appropriately managed in the community. . . . Trial Courts are busy places; short, clear orders are a necessary part of efficient docket management. Unlike Courts of Appeal, Trial Judges do not have the luxury of time to draft lengthy dissertations supporting all of their decisions." *Nantz*, 728 S.W.3d at 812-13. At Gambrel's revocation hearing, the Trial Court succinctly issued findings that satisfied the KRS 439.3106(1)(a) prerequisites to revocation.

### C. Sufficiency of the Evidence

Next, we consider whether the Commonwealth presented sufficient evidence to support a finding that Gambrel was a significant risk to, and unmanageable within, the community. Once again, we emphasize that Gambrel acknowledged and stipulated that he had violated the conditions of his probation in each of three cases both recently and historically. Illustratively, P&P issued 17

separate VSRs for Gambrel's plethora of violations, including absconding from supervision, failing to report, testing positive for drugs or refusing to submit for mandatory substance abuse testing, including strapping artifices to his undercarriage, and failing to pay over $7,000 in restitution owed to the Crime Victim's Compensation Fund. During his probation, Gambrel amassed four separate misdemeanors and a felony conviction. Additionally, the Trial Court issued 15 separate bench warrants to secure Gambrel's appearance to address these violations of his probation and answer to criminal charges.

At the revocation hearing on September 4, 2024, the Commonwealth presented an abundance of testimonial and written evidence demonstrating that Gambrel had violated the conditions of his probation within just the past six months. Contrary to Gambrel's previous assertions that he was a nonviolent offender, his newest charges were for allegedly assaulting a security guard and damaging private property with his vehicle. He also had prior charges of violating a protective order. Gambrel had failed to pay over $7,000 in restitution to the Crime Victim's Compensation Fund and showed no real effort to secure employment in order to make payments. He had admitted to continued substance abuse. And finally, Officer Coffey persuasively testified that Gambrel had frustrated nearly every regular and graduated supervision effort made by P&P, including failing to report even while he was on home incarceration.

After stipulating to most of the evidence presented, Gambrel's chief argument on appeal is that the new charges "were only allegations" on which the Trial Court should not have relied when considering whether he was a significant risk to the community. Appellant's Brief, p. 9. However, "[i]t is not necessary that the Commonwealth obtain a conviction in order to accomplish revocation of probation." *Tiryung v. Commonwealth*, 717 S.W.2d 503, 504 (Ky. App. 1986); *see also Barker v. Commonwealth*, 379 S.W.3d 116, 122 (Ky. 2012); *Lopez*, 292 S.W.3d at 882. Moreover, the new felony charges were not the only violation the Commonwealth presented, and they followed a pattern of behavior that flouted the law in a reckless manner and that was escalating. Gambrel's admission that he continued to abuse drugs under the threat of eight years imprisonment was itself enough to demonstrate his significant risk to the community. In *McClure*, this Court upheld a Trial Court's finding that a probationer who used prohibited substances and attempted to alter the results of his drug screening "under penalty of five years in prison posed a significant risk to, and was unmanageable within, the community in which he lived." 457 S.W.3d at 733. Likewise, in *Andrews*, our Supreme Court upheld revocation of probation where the violation consisted of a single failed drug test along with the probationer's criminal history and refusal to acknowledge his need for rehabilitation. 448 S.W.3d at 780.

In this matter, the Trial Court demonstrated extreme forbearance in light of Gambrel's self-described "lengthy history of making mistakes while on probation" – although we find Gambrel's labeling of his intentional misdeeds as "mistakes" a stretch at best. Appellant's Brief, p. 9. Upon conviction of his third set of felonies in 2018, the Trial Court issued a very clear and emphatic warning to Gambrel. His continued substance abuse posed a significant danger to the community, and his failure to meet a graduated level of supervision in a prolonged treatment plan would result in his incarceration. Nonetheless, the Trial Court extended Gambrel seemingly endless opportunities to comply with this warning over a number of years. Revocation was utterly the last resort after the graduated sanctions had failed, including the intensive drug treatment programs, limited periods in jail, and extended home incarceration with work release. After Gambrel's new charges and the latest in his innumerable violations, we cannot say that the Trial Court abused its discretion when it finally revoked his probation. The evidence in the record amply supports the Trial Court's finding that Gambrel was a significant risk to, and unmanageable within, the community. Thus, the Trial Court's decision to revoke Gambrel's probation "was well within the 'range of permissible decisions allowed by a correct application of the facts to the law.'" *Kendrick*, 664 S.W.3d at 736 (quoting *McClure*, 457 S.W.3d at 730).

## IV. Conclusion

The Trial Court made the requisite findings pursuant to KRS 439.3106, and those findings are supported by the evidence in the record on appeal. For these reasons, we affirm the Jefferson Circuit Court's Orders Revoking Probation.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Adam Meyer
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky